Commonwealth *v.* Scoggins, Appellant.

Argued January 12, 1973.  Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

474

*David E. Auerbach,* Assistant Public Defender, with him *Eckell, Sparks, Vadino, Auerbach & Monte,* for appellant.

*Ralph B. D'Iorio,* Assistant District Attorney, with him *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 4, 1973:

The appellant, David E. Scoggins, was convicted by a jury in Delaware County of murder in the first degree, and the punishment was fixed at death. After the denial of post-trial motions sentence was imposed as the jury directed. In the same trial, Scoggins was also convicted of: (a) assault with intent to ravish; and (b) indecent assault. On the first such conviction, Scoggins was sentenced to imprisonment for a term of seven and one-half to fifteen years. These appeals are from the foregoing judgments of sentence.[1]

That the evidence was sufficient to sustain both convictions is beyond question. From the evidence, the jury was warranted in finding that on August 9, 1969, while in the course of forcibly attempting to have sexual intercourse with Anna Nancy Fields, age twenty-one years, Scoggins repeatedly struck her with his fists on

---

[1] The appeal from the judgment of sentence imposed on the assault conviction was filed in the Superior Court and certified to this Court.

the head causing brain damage which resulted in almost instantaneous death, and that he then threw her lifeless nude body into a nearby creek.

Several assignments of error in the prosecution process are asserted, but none have merit.

It is first asserted the trial court erred in refusing to suppress evidence of two incriminating statements given by appellant to the police after his arrest. The pertinent facts, as disclosed by the record, may be briefly summarized thusly.

Appellant was arrested on August 24, 1969, in Charleston, West Virginia, by an F.B.I. agent accompanied by detectives from Delaware County, on a federal warrant charging unlawful flight to avoid prosecution. The federal agent immediately read to appellant his constitutional rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). One of the Delaware County detectives then repeated the same warnings. Thereafter, the group proceeded to the Charleston Federal Building for booking on the federal charge and some other administrative procedures. When this was completed, the appellant spontaneously and without questioning by the officers began to relate the circumstances incident to Miss Field's death. One of the Delaware County officers immediately interrupted him and again warned the appellant of his constitutional rights. Nonetheless, the appellant continued to give his version of the fatal occurrence.

The following day, the appellant waived extradition and was returned to Delaware County, Pennsylvania, arriving about midnight. He was placed in the Delaware County Prison overnight, and at 12 p.m. on August 26, 1969, the appellant was taken to the office of the Chief of Police of Media where he was again immediately warned of his constitutional rights. Without hesitation the appellant gave the officers a statement

which was stenographically recorded. At 2 p.m., he was arraigned before a magistrate.

After a pretrial evidentiary hearing, the trial court denied a motion to suppress the evidence of the two statements given, as before related, and the challenged evidence was subsequently admitted at trial.

That both statements were freely given is not disputed. It is argued the first statement should have been suppressed since the appellant enjoyed only a limited ability to read and write and had only a third-grade education; hence, he was unable to make an intelligent waiver of his rights.

We have consistently refused to adopt a *per se* rule of inability to waive constitutional rights exclusively based on mental or physical deficiencies. See *Commonwealth v. Daniels*, 451 Pa. 163, 301 A. 2d 841 (1973), and *Commonwealth v. Abrams*, 443 Pa. 295, 278 A. 2d 902 (1971). Rather, we have always adhered to a totality of the circumstances rule where we consider all factors surrounding the waiver to determine whether it was knowing and intelligent. We have reviewed appellant's testimony at the suppression hearing and at trial and conclude the trial court did not err in ruling the appellant waived his rights intelligently and knowingly before he initially incriminated himself. Moreover, we note that at trial, appellant explicitly stated he was aware he had the right to an attorney at the time involved; that he knew he did not have to say anything without his attorney being present; and anything he said would be used against him in a court of law.

Appellant challenges the admissibility of the second statement on the ground the *Miranda* warnings given immediately prior thereto were inadequate. More specifically, it is urged these particular warnings did not make it clear to the appellant he was entitled to have the assistance of counsel during the police questioning.

In pertinent part the appellant was warned as follows: "You have the right to have the services of an attorney before you tell us anything."

Admitting the above language was not identical with that pertinently advised in *Miranda*, however, it is abundantly clear the instant complaint lacks substance. The operative question is not whether the police employed the identical language used in *Miranda*, but whether the words employed were sufficient to convey to the appellant the understanding that he had the constitutional right to the assistance of a lawyer during the police questioning. That the words used were adequate in this respect is borne out by the appellant's own testimony, wherein he stated: "They said anything I would say would be held against me in a court of law, and they said I didn't have to say nothing without my lawyer present." Furthermore, that appellant was adequately and clearly informed of his rights on three separate occasions in the two days before the second statement was given, is not questioned.

The admissibility of the two statements is finally challenged because the appellant was not arraigned promptly before a committing magistrate, particularly after the first statement was given. It is urged the authorities thus violated Rule 117 of the Pennsylvania Rules of Criminal Procedure. Even assuming such Rule were violated, this issue was not raised in the trial court and may not be raised for the first time on appeal. See *Commonwealth v. Agie*, 449 Pa. 187, 296 A. 2d 741 (1972).

It is next asserted the Commonwealth failed to prove beyond a reasonable doubt the cause of death occurred by the criminal agency of the appellant.

The facts are the deceased was found dead, floating in Ridley Creek. An autopsy was performed by a Dr. DeAugustine with the following findings. The victim

suffered a puncture of the right eyeball; there were abrasions and contusions about the eyes, ears, forehead, cheeks, chin, neck, forearms and the chest. Internal examination of the skull indicated there were multiple hematomas in the scalp, and edema within the cerebral cavity, and the veins in the cerebral cavity were markedly swollen. The doctor concluded the cause of death was a cerebral concussion, caused by force or trauma being applied to the head. The doctor completely discounted the cause of death as drowning, and found the heart, lungs and liver to be normal.

The appellant claims the doctor did not state his opinion in terms of "beyond a reasonable doubt." In the recent case of *Commonwealth v. Webb*, 449 Pa. 490, 296 A. 2d 734 (1972), this Court stated: "It was not necessary, as appellants contend, that the witness state it was his conclusion beyond a reasonable doubt the head injuries caused McCall's death. 'Beyond a reasonable doubt' is a legal standard. Medical causation and legal causation are qualitatively different in their applications." Id. at 496, 296 A. 2d at 737. Instantly, the medical witness stated it was his opinion the cause of death was a cerebral concussion and said the concussion and abrasions and contusions were consistent with an attack and heavy blows with fists. In conjunction with this testimony, the Commonwealth introduced the testimony of an Ida Mae Pettry who witnessed the attack and stated that, while struggling with the victim, appellant repeatedly struck her about the head with his fists. Thus, it is clear the Commonwealth produced ample evidence to prove the cause of death by criminal agency of the appellant beyond a reasonable doubt. *Commonwealth v. Radford*, 428 Pa. 279, 236 A. 2d 802 (1968).

Appellant argues it was possible the victim could have died as a result of striking her head on a stone

or piece of concrete, thus causing the cerebral concussion and the death. Although, there is nothing in the record to substantiate this claim, even if it were true, under the facts of this case the appellant would not be relieved of criminal responsibility. The appellant's own evidence established the victim was dead before he left the scene and the testimony of the eyewitness showed he forced the victim to the ground and struggled with her. Considering all of the evidence and the reasonable inferences, it is clear the injuries to the head were suffered during the time appellant was struggling with the victim in an attempt to ravish her. Even if the cerebral concussion were caused by the victim striking her head on a stone, the evidence was adequate to establish it was appellant's criminal agency which caused her to strike her head.

As noted before, part of the Commonwealth's case included the testimony of an Ida Mae Pettry, an eyewitness. Three assignments of error concern this testimony. It is urged: (1) the trial court should have ruled Miss Pettry was an accomplice as a matter of law and charged the jury her testimony came from a corrupt source; (2) the trial court should have instructed the jury there was evidence from which they could find she was an accomplice and, if they so found, then they should consider her testimony as coming from a corrupt source; (3) the trial court should have charged that whether or not Miss Pettry was an accomplice, because she had been promised she would not be prosecuted for any of her actions in connection with the crime, her testimony was to be considered as coming from a corrupt source.

The facts which give rise to these contentions are Miss Pettry was appellant's girl friend and was living with him at the time of the killing. On the night of the fatal incident, she was with appellant before the kill-

ing and at the time thereof. She also continued to live with the appellant for approximately two weeks thereafter. She was arrested under a murder warrant in Washington, D.C. After interrogation the police and the district attorney concluded she did not participate in the crimes, and the only reason she did not come to the police was because of threats on her life by the appellant. Appellant's own version of the occurrence does not indicate she was in any way involved in the commission of the crimes; however, he asserts she stopped him from going to the police and aided him in his flight.

There was a habeas corpus hearing shortly after Miss Pettry's arrest, and a judge (other than the trial judge) determined the Commonwealth did not have any evidence to indicate her involvement in the crimes, and she was released on bond as a material witness. Also at trial her testimony was objected to because of alleged incompetency. The trial judge ruled she was competent to testify, and she was not an accomplice.

That the court did not err in refusing to rule as a matter of law that Miss Pettry was an accomplice is clear. There is nothing in the record, including appellant's own testimony, that would warrant such a ruling. Cf. *Commonwealth v. Sisak,* 436 Pa. 262, 259 A. 2d 428 (1969). An accomplice is one who knowingly and voluntarily cooperates with or aids another in the commission of a crime and may be indicted for the crime with which the accused is charged. Cf. Act of June 24, 1939, P. L. 872, §1105, 18 P.S. §5105. See also *Commonwealth v. Jones,* 213 Pa. Superior Ct. 504, 247 A. 2d 624 (1968). At best, Miss Pettry was an accessory after the fact and not an accomplice. Additionally, there was no request for an instruction to the jury she was an accomplice and no exception was entered for the failure to so charge.

A simple answer to the assignments of error concerning the court's failure to permit the jury to find as a fact Miss Pettry was an accomplice, and the court's failure to charge her testimony should be considered as coming from a corrupt source because she was not prosecuted in connection with the killing, is that these issues were never raised in the trial court, either at trial or in the post-trial motions and may not be raised for the first time on appeal. Moreover, in its charge the court instructed the jury that in assessing Miss Pettry's credibility, it should consider, inter alia, if she had anything to gain by testifying as she did and, if so, did this influence her testimony.

The final assignment of error is that the trial court erred in refusing to sustain the appellant's demurrer to an indictment for rape (on which he was eventually acquitted by the jury) and this prejudiced his right to a fair trial on the other charges.

The facts, as they relate to this issue, are as follows: The circumstances surrounding the killing indicated that rape was involved in the case. The nude body of the victim was found in the water and all the signs showed she had been beaten. The testimony of the eyewitness, Miss Pettry, showed the appellant had forced the victim to go to the wooded area with him; directed her to take off her clothes, and when she did not comply the appellant took them off by force and then lay on top of the nude girl. However, the eyewitness was not able to testify there was actual penetration. The medical examiner was not able to testify there was penetration because the victim had been in the creek for some period of time and it was his judgment testing would show nothing, so he did not undertake any tests.

At the close of the Commonwealth's case, the defense demurred to the charge of rape and the trial

judge refused to take the issue away from the jury. Accepting the demurrer should have been sustained because of lack of evidence of penetration, the error was harmless. Appellant was acquitted on this particular charge by the jury. In urging he was prejudiced by the court's action in submitting this charge to the jury, appellant overlooks the fact that assault with intent to ravish was also in the case and the evidence that went to prove rape was necessary to establish the crime of attempted rape. Thus, the evidence was properly admitted and the mere fact that the court erred in submitting the rape charge to the jury harmed the appellant not an iota.

Alternatively, appellant points out that during the trial when the eyewitness, Miss Pettry, was testifying as to what occurred, she concluded by saying, "he raped her." He alleges this prejudiced his case. Again, there is no foundation for this argument. Immediately after this statement by the eyewitness, the judge gave a cautionary instruction to disregard the use of the word rape by a lay person. The district attorney then asked the eyewitness to explain what she meant by the word rape, and she said sexual intercourse. Moreover, the issue of rape was completely covered in the charge of the court, and the jury's verdict indicates a clear understanding of the necessary elements of the crime.

Only the sentence need give us further concern. In *Furman v. Georgia,* 408 U.S. 238, 92 S. Ct. 2726 (1972), the Supreme Court of the United States ruled the imposition of the death penalty under statutes, such as here involved, is violative of the Eighth and Fourteenth Amendments. Hence, we vacate the sentence of death and in its place impose a sentence of life imprisonment. The judgment imposed on the indictment charging assault with intent to ravish is affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Concurring Opinion by Mr. Justice Roberts:

I concur in the result because appellant was properly warned of his right to have counsel appointed free of charge.

Moreover, while I express no view as to the merits of appellant's claims regarding the corrupt source charge, I agree that those issues may not now be asserted. Appellant failed to raise these issues at trial or in post-trial motions and, thus, may not raise them here for the first time. See *Commonwealth v. Agie,* 449 Pa. 187, 296 A. 2d 741 (1972) ; *Commonwealth v. Donovan,* 447 Pa. 450, 291 A. 2d 116 (1972) ; *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A. 2d 717 (1971).