Gertrude ALLEN, Plaintiff/Appellee,

v.

Alexander ALLEN,
Defendant/Appellant.

No. DC CivApp 1998/234.

District Court, Virgin Islands,
Appellate Division,
D. St. Croix Division.

Oct. 2, 2000.

Jomo Meade, St. Croix, Virgin Islands, for appellant.

George W. Cannon, St. Croix, Virgin Islands, for appellee.

Before RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and BRENDA J. HOLLAR, Administrative Judge, Territorial Court of the Virgin Islands, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM.

This appeal arose out of an action for divorce. Alexander Allen ["appellant" or "Mr. Allen"] seeks review of the following issues: 1) whether the trial court abused its discretion and committed reversible error by allowing Gertrude Allen ["appellee" or "Mrs. Allen"] to present evidence of Mr. Allen's fault although her complaint requested a divorce without fault; 2) whether the trial judge abused her discretion and applied erroneous precepts of law when she awarded Mrs. Allen 100% of the marital homestead; and 3) whether the trial judge committed reversible error when she failed to address the request for relief in Mr. Allen's counterclaim.

### I. FACTS

The testimony presented at trial was contradictory on almost all issues. The only undisputed facts are that the parties were married on September 20, 1963 in Boston, Massachusetts; no children were born of that union; and the marital abode located at No. 107 Tan Tan Terrace, Sion Farm, St. Croix ["107 Sion Farm"] was purchased by the couple in 1979, during their marriage, for approximately Seventy-five Thousand Dollars ($75,000.00). In addition to being the marital abode, 107 Sion

Farm consists of at least three rental units. Although the parties agree that they jointly own 107 Sion Farm, they disagree on their respective levels of contribution in acquiring and maintaining said property.[1] Mr. Allen is now seventy-three years old (born on April 22, 1927), physically disabled, visually impaired, and in failing health. Mrs. Allen is now seventy years old (born on September 28, 1930) and living mainly on the charity of family and fellow church members.

In February 1998, Mrs. Allen filed an action for divorce. Her complaint alleged:

1) that Mr. Allen owed her a portion of the income received from rental properties;

2) that there was jointly owned real and personal property to be distributed by the court;

3) that she was in need of alimony; and finally

4) that there had been a complete breakdown of the marriage relationship to the extent that the legitimate objects of matrimony had been destroyed, and there remained no reasonable likelihood that the marriage could be preserved.

(Joint Appendix ["JA"] at 1–2.) As such, Mrs. Allen requested a divorce absolute without fault to either party, her share of the rental income, alimony, distribution of the jointly owned property, and that each party be required to pay their own costs and fees. (Id.)

Mr. Allen answered the complaint and counterclaimed alleging in relevant part that in 1979 he obtained a home improvement loan ($10,000.00) from the Massachusetts Bay Transportation Authority ["MBTA"], and that Mrs. Allen should be required to pay her proportionate share of that loan, as well as her share of the mortgage and maintenance expenses for 107 Sion Farm. (Id. at 6–7.) Mr. Allen also

prayed for a majority equity in the marital homestead, alimony and spousal support, and an award of costs and fees. (Id.) Lastly, and importantly, Mr. Allen alleged that Mrs. Allen's abandonment was the sole cause of the breakdown of the marriage. (Id.)

Mrs. Allen replied to the counterclaim by denying Mr. Allen's allegations of abandonment, and also denying that due to her "abandonment" Mr. Allen was forced to single-handedly pay the mortgage on 107 Sion Farm, maintain said property and pay the MBTA loan. Mrs. Allen requested dismissal of the counterclaim.

Having heard the arguments and testimony of the parties, the trial court found in pertinent part:

1. That after the parties purchased the home in 1979, plaintiff managed the property while defendant continued to live and work in Boston.

2. That plaintiff paid the down payment ($30,000.00) on 107 Sion Farm with funds that she had earned and saved.

3. That during the time that plaintiff managed the property, the rents collected were sufficient to pay the mortgage, taxes, insurance, and maintenance on the property.

4. That the income from the rental property in addition to paying the above expenses resulted in a surplus which was placed in an account in the name of both parties.

5. That at some time between the years 1984–1986, defendant retired and returned to St. Croix, and took up residence at Plot 107 Sion Farm.

6. That defendant took over the management of the property, including, but not limited to, collecting the rents, paying the mortgage, taxes and insurance and managing the account in which

---

1. Mrs. Allen testified that the $30,000.00 down payment on the home came from her savings and a small loan in the amount of $3,000.00. (Joint Appendix ["JA"] at 54–56.) Mr. Allen testified, on the other hand, that the

down payment on 107 Sion Farm came from his savings, that is, money he gave to Mrs. Allen to save for the purchase of a home. (JA at 83–84.)

plaintiff had previously placed the surplus income.

7. That in 1989, Mr. Allen secured a "divorce" in the Dominican Republic, without notice to Mrs. Allen, and in effect, used said decree to bar her from the residence located at 107 Sion Farm.

8. That from 1989 to the present, Mr. Allen has had exclusive use of the property.

9. That the rental units have essentially remained unoccupied, and the entire property is in need of repair.

10. That Mrs. Allen is unemployed and has no income.

11. That Mr. Allen's monthly income from various pensions amounts to approximately Nine Hundred Fifty[-]Seven Dollars ($957.00) per month.

12. That Mr. Allen has not provided for Mrs. Allen since 1989.

13. That Mr. Allen subjected Mrs. Allen to physical, mental and spiritual abuse.

14. That the marriage has irreconcilably broken down, and there is no likelihood that it can be preserved.

(*Id.* at 11–12.) Based upon these findings, the trial court ordered on October 15, 1998: 1) that the parties be granted a divorce absolute; 2) that Mrs. Allen be granted exclusive occupancy, use, possession and ownership of the marital abode; 3) that Mr. Allen quitclaim all of his interest in 107 Sion Farm to Mrs. Allen and vacate said property within thirty days of the date of that Order, and not place, or cause to be placed, any liens upon said property; 4) that from the date of transfer of said property, Mrs. Allen shall be solely liable for all expenses associated therewith; 5) that both parties' prayers for alimony were denied; and finally 6) that each party bear his own costs and fees. (*Id.* at 13–14.)

Mr. Allen filed a timely appeal of that October 13, 1998 Order, and filed a motion in this Court seeking a stay of execution. Said motion was granted pursuant to Virgin Islands Rules of Appellate Procedure 8(b).[2]

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

■■■ This Court has appellate jurisdiction to review judgments and orders of the territorial court in all civil cases. V.I.CODE ANN. tit. 4, § 33 (1997 & Supp.1999); Section 23A of the Revised Organic Act of 1954.[3] Our review of the Territorial Court's application of legal precepts is plenary, and findings of fact are reviewed under a clearly erroneous standard. *Prosser v. Prosser*, 34 V.I. 139, 921 F.Supp. 1428 (D.V.I.App.Div.1996). An abuse of discretion is a clear or obvious error of judgment that must affect substantial rights, and not simply a different result which can arguably be obtained when applying the law to the facts of the case. *Government of the Virgin Islands v. Texido*, 89 F.Supp.2d 680, 686 (D.V.I.App.Div. 2000). "Even if such abuse of discretion is found, reversal is not warranted if the error was harmless." *Texido*, 89 F.Supp.2d at 683 (citation omitted). Only

---

**2.** The Virgin Islands Rules of Appellate Procedure provide that:

> Requests for a stay of the judgment or order of the Territorial Court pending appeal ... in a civil case must ordinarily be made in the first instance to the Territorial Court. ... A motion for such relief may be made to the Appellate Division, but the motion shall show that application to the Territorial Court for the relief sought is not practicable, or that the Territorial Court has denied an application, or has failed to afford the relief which the appellant requested, with the reasons given by the Territorial Court for its action.... With the motion shall be filed such parts of the record as are relevant....

V.I.R.APP.P. 8(b). Appellant initially filed his motion for a stay in the Territorial Court, but said motion was denied.

**3.** The Revised Organic Act of 1954 is found at 48 U.S.C. § 1613a (1994), *reprinted in* V.I.CODE ANN., Organic Acts, 73–177 (codified as amended) (1995 & Supp.1998) (preceding V.I.CODE ANN. tit. 1) ["Revised Organic Act"].

where the lower court's finding is unsupported by a credible evidentiary basis will the reviewing court reverse its decision, with due regard being given to the trial judge's opportunity to determine witness credibility. 4 V.I.C. § 33; *Feddersen v. Feddersen,* 68 F.Supp.2d 585, 590 (D.V.I. 1999).

## B. The Trial Court Did Not Err in Allowing Testimony of Fault Although Mrs. Allen's Complaint Requested Divorce Without Fault.

■ Mr. Allen argues on appeal that the trial court erred in considering fault in disposing of the marital homestead, because Mrs. Allen's complaint simply sought divorce absolute on grounds of irreconcilable differences and requested that fault not be considered. The gravamen of Mr. Allen's argument is that in an action for divorce, the judgment granted shall be in accordance with the demand of the complaint. Mrs. Allen contends, on the other hand, that the pleadings were not defective, and that fault was properly considered in the court's exercise of its authority to equitably distribute the marital homestead.

Mr. Allen ignores several facts in making this argument. First, while Mrs. Allen requested a "divorce" without fault, her complaint requested that "the homestead and jointly owned properties and personal property be justly distributed." (*Id.* at 2.) Disposition of the marital homestead (unlike determinations regarding alimony, divorce, and support) allows for consideration of fault. *Feddersen,* 68 F.Supp.2d at 594 (citations omitted). As the trial judge aptly stated, "Fault goes to distribution." (*Id.* at 43.) Second, Mr. Allen ignores the significance of his counterclaim wherein he raises the issue of fault by alleging that Mrs. Allen's abandonment was the sole cause of the breakdown of the marriage. The trial judge explained the significance and scope of Mr. Allens' counterclaim when she said:

> Counsel, remember your client brought up all these matters in the counterclaim. Even if one were to argue it is not directed to any specific pleading in her complaint, it is certainly related to the counterclaim. . . .
>
> . . . .
>
> THE COURT: So all of these issues, whether you want to say it in the context of the complaint or counterclaim, they are properly before the Court. . . .

(JA at 41); *see* Federal Rules of Civil Procedure 8 and 13; *see, e.g., Westridge v. Wright,* 466 F.Supp. 234, 237 (E.D.Ark. 1979) ("The complaint in a civil case ordinarily defines the issues involved in a lawsuit unless other issues are raised through some responsive pleading, counterclaim or cross complaint.").

Having raised fault and alleged entitlement to a majority distribution of the homestead, Mr. Allen is now estopped from claiming surprise and lack of notice that issues of fault would be introduced. We further find that even if Mr. Allen had not raised the issue of fault, the trial judge was authorized to consider fault in dividing the marital homestead in accordance with the equity of the case. 33 V.I.C. § 2305(d); *Feddersen,* 68 F.Supp.2d at 594 (citing *Charles v. Charles,* 1985 St.T.Supp. 75 (D.V.I.1985), *aff'd,* 788 F.2d 960 (3d Cir.1986) (holding that in disposing of the marital homestead, it is permissible to utilize fault for purposes of awarding alimony or dividing property when the divorce itself is granted on "no-fault" grounds)).

## C. The Trial Court Erred in Not Articulating the Factors Considered in Awarding Mrs. Allen 100% of the Marital Homestead.

■ A "homestead" is defined as "the abode including land and buildings, owned by, and actually occupied by, a person, or by members of his family free of rental charges." 33 V.I.C. § 2305(a). As previously stated, fault is a proper consideration in dividing the marital homestead. "The

rationale for allowing marital misconduct to be utilized as a factor in the property disposition is that a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive a financial kudo for his or her misconduct." *Charles,* 788 F.2d at 960. This Court heeds the caution that:

> It is the responsibility of an appellate court to accept the ultimate factual determination of the factfinder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court. To hold otherwise would be to permit a substitution by the reviewing court of its finding for that of the trial court, and there is no existing authority for this in the federal judicial system, either by American common law tradition or by rule and statute.

*Feddersen,* 68 F.Supp.2d at 592 (quoting *Bloch v. Bloch,* 473 F.2d 1067, 1068–69 (3d Cir.1973)).

At trial, Mrs. Allen testified that she was subjected to physical, mental, verbal and spiritual abuse by Mr. Allen. (JA at 44, 45–46, 50, 60–61.) Mrs. Allen's witness, Nola Wade, also testified that on one occasion she saw Mr. Allen grab the telephone from Mrs. Allen. (*Id.* at 76.) Mr. Allen, on the other hand, testified, "Since God give me life, I never strike a woman in my own life." (*Id.* at 100.) He denied all of the abuse alleged by Mrs. Allen, and also denied barring her from entering the house.

The trial judge, faced with contradictory testimony on almost every issue, weighed the credibility of the parties and determined, *inter alia,* that the down payment for 107 Sion Farm came from Mrs. Allen's savings; that upon taking over the management of the property, Mr. Allen did not share any of the proceeds from the rental units with Mrs. Allen; that Mr. Allen had subjected Mrs. Allen to abuse; and that Mrs. Allen was entitled to 100% of the marital homestead.

Having reviewed this matter, we remand for the trial judge to articulate the factors which led to the award of 100% equity in the marital homestead to Mrs. Allen. Factors to be considered when determining the equities in the marital homestead are set forth in the Uniform Marriage and Divorce Act as follows:

> In making apportionment the court shall consider the duration of the marriage, and prior marriage of either party, antenuptial agreement of the parties, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the ... estate[ ], and the contribution of a spouse as a homemaker or to the family unit.

UNIF. MARRIAGE AND DIVORCE ACT § 307, 9A U.L.A. 288 (1998); *Fuentes v. Fuentes,* Civ. No. D89/1995, 1997 WL 889532, *4 (Terr.Ct. May 12, 1997) (In disposing of the marital homestead, the trial court shall review the circumstances surrounding the couple's lives, the properties of each respective spouse, and any culpable conduct.)

In addition to detailing the specific apportionment of fault, the trial court's findings should also state whether Mrs. Allen's alleged initial down payment of $30,000.00 in the marital homestead was money accumulated during the marriage and, thus, marital property, or whether the money was traceable to Mrs. Allen from an asset or money acquired before the marriage, or from an inheritance during the marriage, in which case the latter would be considered Mrs. Allen's money. In sum, the

findings must articulate how the equities were determined.

### D. The Trial Court Erred in Not Ruling on Mr. Allen's Counterclaim to Have Mrs. Allen Pay Her Proportionate Share of the $10,000.00 Loan from the MBTA.

Mr. Allen's counterclaim sought reimbursement from Mrs. Allen for her proportionate share of a $10,000.00 loan he allegedly acquired from the MBTA, but the October 15, 1998 Order did not dispose of that issue. Mrs. Allen concedes that "[t]here is no explicit evidence from the Court's findings, that it considered Appellant's very dubious testimony as to the alleged loan." (Brief of Appellee at 26.) Mrs. Allen, nevertheless, contends that the trial court should not be expected to undertake the "onerous task" of "stat[ing] every piece of evidence attempted to be admitted at trial and which was not admissible or not found credible by the [c]ourt." (*Id.* at 25.) Finally, Mrs. Allen urges this Court to assume what the trial court would have found given the evidence presented. Mrs. Allen contends, "In light of Appellant's credibility as a witness, it is not far fetched to deduce that the Court could not arrive at a reasonable conclusion from the evidence as to the funds. It would have been error for the Court to find said evidence credible, given the confusion created by Appellant as to those funds." (*Id.* at 26.) This Court finds that because the trial court did not resolve Mr. Allen's counterclaim, on remand, the court's findings should also include the status of the alleged $10,000.00 loan made by the MBTA to Mr. Allen.

### E. The Trial Court Erred in Not Articulating Why Mrs. Allen was not Entitled to Alimony

■ Although not raised on appeal, the Court is compelled to address this issue. Mr. Allen has a monthly income of approximately $957.00 from various pensions, and there was testimony that Mrs. Allen has no earned or unearned income, and lives on the charity of family and friends.

■ The law of alimony in the Virgin Islands has shifted from a fault-based analysis to one based on the needs of the spouse. 16 V.I.C. § 109; *Hamilton v. Hamilton*, 38 V.I. 3, 1996 WL 941959 (Terr.Ct.1996). In this case, it appears that financial need was established, notwithstanding any finding of fault, and based on *Fuentes v. Fuentes*, 38 V.I. 29, 1997 WL 889532 (Terr.Ct.1997), the finding that Mrs. Allen is not entitled to alimony is unsupported by the evidence. A pension fund is marital personal property, subject to the claim by the other spouse upon divorce. *Fuentes*, 38 V.I. at 40, 1997 WL 889532. We, therefore vacate the denial of Mrs. Allen's request for alimony, and remand for further proceedings in which the court will determine the amount of alimony to which Mrs. Allen is entitled.

### III. CONCLUSION

In conclusion, we affirm the trial judge's determination that fault is a proper consideration in weighing the equity of the case. We remand for findings of fact on the distribution of the marital homestead and the disposition of the MBTA loan. Finally, we vacate the denial of Mrs. Allen's request for alimony, and remand for further proceedings.