**Felipe LEDESMA Appellant,**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

**No. CR. APP.1996/080.**

District Court,
Virgin Islands,
St. Croix Division.

Aug. 20, 2001.

As Amended Aug. 29, 2001.

Jacqueline Warner Mills, St. Croix, VI, for Appellant.

Carol S. Moore, Virgin Islands Dept. of Justice, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and VERNE A. HODGE,[1] Presiding Judge of the Territorial Court of the Virgin Islands, Sitting by Designation.

1. The Honorable Verne A. Hodge retired as Presiding Judge of the Territorial Court on November 6, 1999.

## OPINION OF THE COURT

FINCH, Chief Judge.

Felipe Ledesma ("appellant" or "Ledesma") appeals his conviction on one count of aggravated rape and two counts of unlawful sexual contact with a minor child on Fifth Amendment grounds. The following issues are presented on appeal: 1) Whether a statement to police and the waiver of rights may be deemed voluntary and knowing and, therefore, valid, where appellant alleges that he was under the influence of prescribed medication during questioning, and that he is unable to read. 2) Whether the trial court erred in admitting evidence of similar crimes of child molestation by the appellant. For the reasons set forth herein, we will affirm appellant's conviction.

## FACTS AND PROCEDURAL HISTORY

In May 1995, Ledesma visited a doctor in Puerto Rico seeking relief from emotional distress, depression, and insomnia which he alleges were caused by a tumultuous relationship between him and his wife. Ledesma was prescribed, and commenced taking, Xanax, an antidepressant drug.

While in Vieques, Ledesma received word that he was sought for questioning by the Virgin Islands Police Department. Ledesma made arrangements to return to St. Croix, and took another dose of Xanax prior to leaving Vieques. Upon arrival in St. Croix, Ledesma and his father went directly from the airport to the police station. Ledesma says he was "listless and dazed" when he arrived at police headquarters in Golden Grove ("headquarters"), where he was, at that time, employed in the auto repair division. As an employee at headquarters for about fifteen years, Ledesma was familiar with the people working there, and sought out the police detectives.

Detective Lori Hodge ["Hodge"] read Ledesma his rights, and gave him a copy of the advice of rights form to follow while she read. Hodge paused after each line to inquire whether Ledesma understood his rights, and he responded in the affirmative. Ledesma then signed both the advice of rights form and a waiver of those rights. Hodge, who knew Ledesma well after years of working with him, said that although he was not as cheerful as usual, he did not appear ill or dazed.

While being questioned by police at headquarters, Ledesma confessed to having sexual intercourse with the minor sister of his then-wife at least once when she was ten years old. Hodge then proceeded to get a statement from Ledesma. Hodge recorded (in writing) not only the questions posed to Ledesma, but also his responses thereto. After Hodge wrote Ledesma's eight-page statement, she asked him to read it, because his signature would be required. Ledesma indicated that he was too upset to read. Hodge read the statement, at Ledesma's request, and asked him whether it was accurate. Ledesma responded in the affirmative and signed each page of the statement. Ledesma now alleges that he cannot read, despite attending school up to the tenth grade. The questioning lasted approximately one and one-half hours, commencing at 9:25 a.m. and ending at 10:50 a.m. Ledesma was arrested and charged with aggravated rape and unlawful sexual contact of the minor girl.

At trial, the court admitted Ledesma's confession into evidence over defense counsel's objections. The court found that there was evidence that contradicted appellant's assertions that (1) he could not read, and (2) that the medication adversely affected his ability to make a knowing and voluntary waiver of his rights during the interrogation. The court further found

that, because there was no evidence that Ledesma did not understand his rights, his waiver and statement were knowing and voluntary.

The trial court also admitted evidence of the appellant's prior sexual acts with the victim dating back to when she was seven-years-old, although he was charged only with offenses that occurred from when the minor was ten-years-old. Ledesma was convicted of aggravated rape and unlawful sexual contact in connection with the latter offense.

## DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has appellate jurisdiction to review criminal cases from the Territorial Court pursuant to V.I. CODE ANN. tit. 4, § 33. A determination of whether appellant's waiver of his rights was valid under the standards outlined in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is subject to plenary review. However, this appellate court must defer to the trial court's findings of fact and disturb such findings only if clearly erroneous and unsupported by the record. 4 V.I.C. § 33; *Allen v. Allen*, 118 F.Supp.2d 653, 656–57 (D.V.I.2000). Finally, the trial court's admission of evidence of other crimes may be reversed only for abuse of discretion. *Gov't of the Virgin Islands v. Archibald*, 28 V.I. 228, 987 F.2d 180 (3d Cir.1993); *Gov't of the Virgin Islands v. Grant*, 21 V.I. 20 (D.V.I.App.1984).

### B. Voluntariness

Under the guidelines set forth in *Miranda*, a person who is subject to custodial interrogation must be informed in clear and unequivocal terms that he has the right to remain silent; that any statement he does make may be used as evidence against him; that he has a right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.[2] *Miranda*, 384 U.S. at 444, 467–68, 478, 479, 86 S.Ct. 1602. He must also be aware of the consequences of waiving this right. *Id.* at 469, 86 S.Ct. 1602.

There is a strong presumption against the waiver of fundamental Constitutional rights; therefore, where a statement is taken without the presence of an attorney, the burden is on the government to demonstrate that the defendant "knowingly and intelligently" waived this privilege against self-incrimination. *Id.* at 470, 475, 86 S.Ct. 1602. A statement is deemed voluntary and admissible if it is the product of free, deliberate choice and without "compelling influences." *Id.* at 478, 86 S.Ct. 1602. However, it is not enough that the statement was voluntarily given; it must have also been given knowingly— with full understanding of the rights that were available and that were being waived. *Id.*

In assessing whether a waiver of rights and admission were voluntary and knowing, courts must look to the "totality of the circumstances"—the particular facts surrounding the waiver that would tend to suggest the presence of coercion, whether explicit or implicit. *United States v. Briscoe*, 69 F.Supp 2d 738, 41 V.I. 446 (D.V.I. 1999); *see also Gov't of the Virgin Islands v. Roberts*, 19 V.I. 196, 207 (D.V.I.1982) (citations omitted). The threshold inquiry, then, is whether the behavior of law offi-

---

**2.** Although appellant cites much case law regarding the point at which *Miranda* warnings become necessary and what constitutes custodial interrogation, there is no dispute that *Miranda* warnings were given prior to the interrogation and the statement, as evidenced by the advice of rights and waiver form which was signed by appellant. Thus, this Court need not reach the merits of whether a *Miranda* warning was, indeed, warranted.

cers or the personal characteristics of the defendant was "such as to overbear his will to resist and bring about a confession not freely self-determined." *Roberts*, 19 V.I. at 207 (citations omitted). Several factors guide this analysis: the defendant's age, education, intelligence, occupation, advice of rights administered, length of detention, length of questioning, physical or mental punishment or exhaustion. *Miller v. Fenton*, 741 F.2d 1456, 1460 (3d Cir.1984).

■ At the outset, appellant has not shown the presence of any facts suggestive of police coercion or external influences, neither implicit or explicit, bearing on the issue of voluntariness, the initial requirement in any voluntariness determination. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("Coercive police activity is a necessary predicate to a finding that a confession is not voluntary."). To the contrary, the facts tend to negate any suggestion of coercive influence. Ledesma voluntarily, along with his father, went to the police station and initiated the police contact. Further, the location—albeit a police station—could be categorized as anything but a police-dominated, coercive atmosphere, because of Ledesma's familiarity with both the place and the people there. Ledesma had worked in that facility for almost fifteen years and knew the interrogating officers very well. Indeed, he admittedly regarded them as people he trusted, and the trial judge noted that Ledesma did not indicate any feelings of intimidation or fear. (Ap-

pendix for Appellant ("App."), Vol. I at 145.) Moreover, the questioning lasted approximately one and one-half hours, during which Ledesma was offered food and drink, and given the option of remaining silent or securing an attorney prior to questioning. The trial judge made these findings, and there is nothing in the record to indicate that the appellant had a reasonable belief that he was not free to take advantage of his *Miranda* rights at any time, if he so desired. The rationale of *Miranda* is to prevent the dominating, unfairly advantageous and intimidating questioning by police that would elicit forced confessions. *Miranda*, 384 U.S. at 455–58, 86 S.Ct. 1602. Indeed, the facts in this case support our finding that the stated purpose of *Miranda* was not violated.

## C. Influence of Drugs on Voluntariness

■ Appellant asks this Court to find that his statement was involuntary based, in part, on the fact that he had ingested Xanax, a prescribed medication on the morning he was questioned. While courts have recognized the influence of drugs as one factor in determining voluntariness, involuntariness may not be inferred merely because of drug usage or ingestion.[3] Rather, such usage must have had the effect of overcoming appellant's free will. *Connelly*, 479 U.S. at 164, 107 S.Ct. 515 (holding that while defendant's mental condition may be a significant factor in the "voluntariness calculus ... this fact does

---

**3.** In support of his argument that consumption of Xanax rendered any admission invalid, appellant cites to cases where the courts have ruled such admissions involuntary. However, such reliance is misplaced, because common in these cases is an acknowledgment that the drug usage was only one factor and was coupled with other evidence or extreme circumstances tending to show that the defendant's will was overcome by such usage. *See Beecher v. Alabama*, 408 U.S. 234, 92 S.Ct. 2282, 33

L.Ed.2d 317 (1972) (finding confession involuntary and "the product of gross coercion" where the defendant, wounded and earlier held at gunpoint by police, confessed after being given two large doses of morphine); *compare United States v. Williams*, 128 F.3d 1128 (7th Cir.1997) (upholding a confession made after the defendant was hospitalized and injected with "truth serum," where he showed no effects or impairment from the drug).

not justify the conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional voluntariness"); *accord United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990).[4]

Appellant has made no showing that his use of the prescription medication was sufficient to—and did, in fact—impair his ability to make a conscious waiver. Indeed, there was evidence to the contrary, and the trial judge found that appellant was coherent during the questioning and fully responsive. (App., Vol. I at 153–54.) The questioning officer, a longtime colleague of appellant, also did not detect any unusual behavior. Additionally, although appellant told the officer he was upset by the course of events, he did not indicate that he felt ill. As such, the trial court's findings of fact are fully supported by the record. There being no clear error, these findings will be left undisturbed and the statement and waiver held voluntary.

## D. Influence of Reading Ability on Voluntariness

The same standard must be applied to reject appellant's argument that his alleged inability to read works against a finding of voluntariness. While courts also recognize a defendant's education level and illiteracy as a factor in determining whether a waiver may be deemed voluntary and knowing, the inquiry into voluntariness does not end where it is determined that a suspect is unable to read or is otherwise mentally or educationally deficient. Such an impairment must also be shown to have removed the defendant's ability to exercise his free will or resulted in such will being overborne. *Connelly,* 479 U.S. at 162, 107 S.Ct. 515.[5] The focus of the inquiry, as the trial judge stated, is not simply whether Ledesma could not read as he claims,

---

**4.** *See, e.g., United States v. Magness,* 69 F.3d 872, 874 (8th Cir.1995) (rejecting defendant's claim of involuntary consent based on the fact that he had taken four to five times his prescribed dosage of anti-anxietal medication before and more after his arrest, where defendant was clear and coherent); *United States v. Baltrunas,* 957 F.2d 491, 496 (7th Cir.1992) (rejecting defendant's claim that he was incompetent to waive his rights due to his heroin addiction and use of the drug on the day of his arrest, because the defendant did not appear impaired at the time of questioning); *United States v. Short,* 947 F.2d 1445, 1450 (10th Cir.1991) (upholding a statement as voluntary where the suspect did not tell police he felt ill from the pain medication and where he responded intelligently throughout the questioning); *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990) (holding that statement was not involuntary where the suspect had recently used methamphetamines and had not slept for five days prior to his arrest); *Boggs v. Bair,* 892 F.2d 1193, 1198–99 (4th Cir.1989) (rejecting defendant's claim that he was so intoxicated that his confession was not the product of his rational intellect and free will, where there was no showing that Boggs was so intoxicated that his will was over-

borne); *Cross v. State,* 536 So.2d 155, 158–59 (Ala.1988) (rejecting voluntariness challenge based on influence of Valium and other medication, where defendant was coherent); *United States v. Dutkiewicz,* 431 F.2d 969, 970 (3d Cir.1970) (holding that although the defendant was under the influence of narcotics, he knowingly and intelligently waived his Constitutional rights).

**5.** *Accord United States v. Young,* 529 F.2d 193, 195 (4th Cir.1975) (holding that defendant's low I.Q. and limited education and reading ability was not a bar to a voluntariness finding, where the totality of the circumstances indicated defendant's comprehension of the *Miranda* warnings); *Commonwealth v. Scoggins,* 451 Pa. 472, 304 A.2d 102, 105 (1973) (holding that there is no *per se* rule of inability to waive based on mental or physical disabilities; totality assessment governs); *Miller v. United States,* 396 F.2d 492, 495 (8th Cir.1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969) (finding a voluntary waiver where defendant had a third or fourth grade education and limited ability to read or write, but the court determined he had the ability to comprehend).

but whether this alleged impediment prevented him from understanding his rights as read to him.

◼ In this case, the trial judge noted that appellant had attended school through the tenth grade, successfully completed a diving course in recent years which required reading and written test materials, and was able to function in various jobs. The judge also noted the coherency with which appellant responded to questions asked of him during the interrogation. Further, Ledesma was read the warnings and asked after each line if he understood what was being read, to which he responded affirmatively. (*Id.* at 141–44.) Based upon these facts, the trial court rejected appellant's assertions of illiteracy and found from the evidence that he had the capacity to understand his rights.

There is nothing in the record to indicate, nor was there anything during the interrogation to alert officers that Ledesma did not understand what his rights were, and the nature of the rights he was waiving. We note, once again, that Ledesma was in familiar surroundings and with acquaintances. Thus, accepting the trial court's findings of fact, there is nothing to preclude a finding that appellant's waiver and statement were voluntary and knowing within the constructs of *Miranda.*

### E.  Prior Acts Evidence

Appellant avers that the trial court erred in admitting evidence of his prior sexual acts with the victim on grounds that the evidence had the sole purpose of showing his propensity to commit the crime for which he was charged. The Federal Rules of Evidence proscribe the use of evidence of past crimes as an indication that defendant probably committed the crime in

question. FED. R. EVID. 404(b).[6] However, Rule 404(b) does not preclude the use of prior acts evidence for some other relevant purpose, as outlined. *See Gov't of the Virgin Islands v. Archibald,* 28 V.I. 228, 235–36, 987 F.2d 180 (3d Cir.1993) (holding that testimony was inadmissible because it was not probative of any material issue except defendant's propensity to commit the crime). This jurisdiction has recognized that evidence of other acts may be admitted to provide background information and the parties' knowledge of each other; to establish a continuing relationship; and to explain the circumstances, background or development of the crime charged or "complete the story of the crime on trial." *Gov't of Virgin Islands v. Harris,* 938 F.2d 401, 420 (3d Cir.1991) (citations omitted) (upholding admission of evidence of prior threats and other acts of domestic violence against defendant's wife as background information for murder charge and to show intent); *Colon v. Gov't of the Virgin Islands,* 30 V.I. 119, 124, 1994 WL 326210 (D.V.I.1994) (affirming admission of evidence that was "highly probative in determining appellant's intent by demonstrating a cumulative or continuing action and the 'absence of mistake or accident' "); *accord United States v. Hadley,* 918 F.2d 848, 853 (9th Cir.1990) (affirming admission of prior bad acts evidence of sexual abuse of children, noting that such testimony "helped to explain the testimony of the abused children and therefore rendered 'appreciable help' to the jury").

◼ Federal Rule of Evidence 414, which provides a liberal exception to Rule 404(b), became effective on July 9, 1995, after the incident in question. Rule 414,

---

**6.**  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." FED. R. EVID. 404(b).

which would support the admission of testimony relating to appellant's prior contacts with the victim, provides in relevant part that:

> (a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on *any matter to which it is relevant.*

FED. R. EVID. 414(a) (emphasis added). At first glance this rule may appear *ex post facto,* but procedural laws may be retrospectively applied. *In re Minarik,* 166 F.3d 591, 599 (3d Cir.1999) (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.")).[7] Federal Rule of Evidence 414, being procedural in nature, was properly applied retrospectively. (App., Vol. II at 74.) Thus, even assuming *arguendo* that the prior acts evidence in this instance had the effect of placing appellant's character into evidence, this result alone would not circumscribe the admission of such evidence in cases, such as the one before this Court, involving child sexual molestation.[8] This exception must be applied within the limits of Rule 403, which requires a balancing of the prejudice to the defendant against the probative value of the evidence and should be inadmissible only when the former "substantially outweighs" the latter. FED. R. EVID.

**7.** *See also Laborers' Int'l Union of North America, AFL–CIO v. Foster Wheeler Energy Corp.,* 26 F.3d 375, 387 n. 8 (citing 28 U.S.C.A. § 2074(a) (Supp.1993)) (granting the Supreme Court the authority to fix the extent to which a newly promulgated rule of civil procedure or evidence shall apply to pending proceedings, but only "to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule ... would not ... work injustice"); *cf. Bradley v. School Bd.,* 416 U.S. 696, 716–21, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (determining whether retrospective application of a newly enacted procedural statute in that case would breed manifest injustice).

**8.** While Rule 404 was enacted specifically to guard against the use of the predispositions of a defendant, the statement of Rep. Susan Molinari, set forth in the congressional discussion of Rule 414, shows the intent to allow just such character evidence where sexual molestation of a child is alleged:

> In contrast to Rule 404(b)'s general prohibition of evidence of character or propensity, the new rules for sex offense cases authorize admission and consideration of evidence of an uncharged offense for its bearing *"on any matter to which it is relevant."* This includes the defendant's propensity to commit sexual assault or child molestation

> offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.

> . . . . .

> In child molestation cases, for example, *a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant*—a sexual or sadosexual interest in children—that simply does not exist in ordinary people. *Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense.*

> . . . . .

> To implement the legislative intent, the courts must liberally construe these rules to provide the basis for a fully informed decision of sexual assault and child molestation cases, including assessment of the defendant's propensities and questions of probability in light of the defendant's past conduct.

CONG. REC. H8991–92 (Aug. 21, 1994) (statement of Rep. Molinari) (emphasis added).

403; *Harris,* 938 F.2d at 419 (citing *United States v. Scarfo,* 850 F.2d 1015, 1019 (3d Cir.1988)).

■ Where there is potential for prejudice, the court may even the playing field through a limiting instruction, allowing the evidence to be used only for the purpose for which offered. *See Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (holding that to be admissible, the evidence must have proper purpose, be relevant, have probative value that outweighs its potential for unfair prejudice, and be accompanied by a limiting instruction to jury).

■ In assessing whether evidence regarding appellant's sexual acts with the victim prior to the offense for which he was charged was properly put to the jury, this Court must determine whether that information would "have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. In the instant case, the trial court explained its reasons for allowing the evidence, as summarized below:

1. The frequency of the acts in this case, as well as the similarities and the surrounding circumstances are as such that they tend to show a habit of the defendant.

2. The evidence is probative of intent, an essential element of the crime.

3. The evidence helps to explain the evidence and testimony regarding the victim's reaction to the acts and failure

to resist appellant's advances or to alert anyone, given the fact that the alleged intimidation and fear started at a very young age (seven) and had progressed over a period of years.

4. The evidence of this continued action helped to explain the absence of anal trauma to the victim, a fact which was introduced by the defendant and which raised credibility questions.[9]

(App., Vol. II at 73–80.) In determining whether to exclude evidence, the trial judge considered several factors: that the alleged incidents involved the same parties; the location and manner of commission; the development of the continuing action; and the effect on the victim. The judge found that the probative value of the evidence was not substantially outweighed by the potential for undue prejudice to the appellant. (*Id.* at 82.)

Thus, given the trial court's findings and despite the liberal exception of Rule 414, there is no basis to conclude that the evidence of prior sexual acts was offered to show propensity.[10] The court clearly outlined its balancing process and explained the logical relevance of the evidence. Additionally, the court instructed the jury to consider the evidence only for the limited purpose for which it was offered. (*Id.,* Vol. III at 42–48, 55.)

This Court has noted that the trial judge's balancing under Rule 403 is subject to very limited review unless no rationale is put forward. *Colon,* 30 V.I. at 122–23, 1994 WL 326210; *Archibald,* 987 F.2d

---

9. The Government of the Virgin Islands ("government") argued that without the prior acts evidence, the jury would not get a clear understanding of appellant's level of control and intimidation over the victim, and distortion of the truth would have been inevitable as a result of the physician's testimony that there was no anal trauma despite allegations of repeated anal intercourse.

10. Evidence of prior sexual activity has been ruled inadmissible where there was no logical link or relevance between the acts shown; the only basis appeared to be propensity; and the potential for prejudice substantially outweighed its probative value. *See Gov't of the Virgin Islands v. Archibald,* 28 V.I. 228, 987 F.2d 180 (3d Cir.1993); *Gov't of the Virgin Islands v. Pinney,* 27 V.I. 412, 967 F.2d 912 (3d Cir.1992).

at 186 (citations omitted). The trial judge aptly explained the rationale for admitting the evidence after considering Rules 404(b), 403 and 414. The court's limiting instruction also adequately instructed the jury on the use of that evidence. Thus, no abuse of discretion is evident.

**CONCLUSION**

The record reflects no clear error in the trial court's findings that appellant comprehended the *Miranda* warnings and was not sufficiently impaired by prescribed medicine to prevent a knowing and voluntary waiver of those rights. Additionally, the court's admission of past-crimes evidence, which was not proffered to show propensity, is properly grounded in Rule 404(b), and is further supported by the liberal exception of Rule 414(a), and no abuse of discretion is shown. Therefore, this Court will affirm the ruling of the trial court.

MOORE, J., concurring in the result.

I agree that Ledesma's statements to the police were properly admitted. He satisfied both the requirement that his waiver of his *Miranda* rights was made voluntarily in the sense that it was the product of a "free and deliberate choice rather than intimidation, coercion, or deception," and made knowingly and intelligently "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.") (citations omitted).

I also very reluctantly join in the affirmance of this conviction even though I believe that the trial judge seriously erred by failing to restrain the overreaching of the prosecution. I would find that the trial judge abused his discretion in admitting prior bad acts of defendant for the express purpose of showing his propensity to commit the crimes for which he was charged, that is, the court allowed the jury to consider these uncharged crimes as direct evidence of Ledesma's guilt of the three charged offenses. I believe the judge also abused his discretion in allowing the prosecutor to "sandbag" the defendant by withholding expert witness testimony under the guise that it was "rebuttal" evidence. The so-called expert testimony was clearly a part of the prosecution's direct case. By allowing the government to put on the expert after Ledesma had put on all his evidence and rested his case, the trial court countenanced trial by ambush and permitted the government to circumvent the pretrial disclosure of expert testimony required by Federal Rule of Criminal Procedure 16.[11] I nevertheless am compelled to concur in the result because I do not believe these errors deprived the defendant of a fair trial in light of the other strong evidence of his guilt, namely, his confession and the corroborating testimony of the victim in support of the three charged offenses.

---

11. "The practice and procedure of the Territorial Court shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by ... the Federal Rules of Criminal Procedure and the Federal Rules of Evidence." TERR. CT. R. 7.