## Commonwealth v. Smith

*Bernard Siegel*, for Commonwealth.

*Leonard Ambrose*, for defendant.

McCLELLAND, *J.*, January 19, 1976—Glenn Albert Smith is the Defendant in several indictments concerning an arson fire at 3007 Rose Avenue, Wesleyville, Pa. On October 27, 1975, Smith entered pleas of guilty to two counts of arson, one count of corruption of minors and one count of conspiracy. Contrarily, Smith entered a not guilty plea and had a trial without a jury under an indictment which alleged that on September 28-29, 1974, he engaged as a principal or accomplice in the arson of 3007 Rose Avenue, Wesleyville, Pa., and during the fighting of said fire, a fireman by the name of Albert F. Beute died. The indictment charged Smith with murder of the second degree which is now felony-murder.

In fact, Beute suffered a heart attack at the arson scene and died in the hospital.

This case appears to be one of first impression in Pennsylvania as well as in the United States. If not, many lawyers and one judge have failed to find the identical case.

Originally, under English common law, a person who, in the commission or attempted commission of a felony, caused another person's death was guilty of murder. Of course, at that time, all felonies were punishable by death, so it mattered little

whether the felon was killed for a felony such as arson or for murder itself.

In recent years, relatively minor crimes involving no physical danger have been designated felonies and thus, limitations have been forced upon the dogmatic felony-murder doctrine. See Powers v. Commonwealth, 110 Ky. 386, 61 S.W. 735 (1901); Criminal Law, by Wayne R. LaFave and Austin W. Scott, Jr., 545, 546, and, generally, Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958), and Commonwealth v. Bolish, 391 Pa. 550, 138 A.2d 447 (1958).

Nevertheless, the most recent Pennsylvania Act of Assembly recedes in language back through the centuries to the ancient common law. On March 26, 1974, the Pennsylvania Crimes Code was amended to read, in part, as follows:

"A criminal homicide constitutes murder of the second degree when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony": (18 Pa. C.S. §2502).

The former statute, effective June 6, 1973, enumerated certain felonies such as arson, burglary, robbery, rape, etc. For the purposes of this opinion, the unusual change in terminology will make no difference in the end result.

Basically, the limitations of the felony-murder rule have required various degrees of causation between defendant's conduct and the victim's death and that the felony be an inherently dangerous one.

It can be safely said that an almost universal limitation upon the felony-murder rule is that the felony must be of a nature involving violence or danger to life; i.e., an "inherently dangerous

felony": 35 ATLA Law Journal, 296, 1974. The rationale for this concept was clearly stated by Justice Herrmann of the Supreme Court of Delaware, in Jenkins v. State, 230 A.2d 262 at 268-69 (1967), where he wrote:

"The only rational function of the felony-murder rule is to furnish an added deterrent to the perpetration of felonies which, by their nature or by the attendant circumstances, create a foreseeable risk of death. This function is not served by application of the rule to felonies not foreseeably dangerous. The rule should not be extended beyond its rational function. Moreover, application of the rule to felonies not foreseeably dangerous would be unsound analytically because there is no logical basis for imputing malice from the intent to commit a felony not dangerous to human life."

We need not tarry long over this concept, because even if the felony involved in felony-murder must be inherently dangerous to human life, arson is such a felony. See the splendid article; "What Felonies Are Inherently or Foreseeably Dangerous to Human Life for Purposes of Felony Murder Doctrine," 50 A.L.R. 3d 397.

"Causation" not "inherent danger" is pivotal here. Obviously, in most cases where death has resulted from arson, the courts have found sufficient causal connection between the killing and the arson to make out the crime of felony-murder: Wharton's Criminal Law and Procedure, by Ronald A. Anderson, vol. 1, page 546, and 87 A.L.R. 414.

The classic example is State v. Glover, 330 Mo. 709, 50 S.W. 2d 1049 (1932), and it is somewhat similar to this case. Defendant committed arson in a drugstore and a fireman who responded to the

alarm became the victim of an explosion which pinned him in the ruins and burned him to death. The Glover view that the fireman's death was a felony-murder has been cited with approval by the courts of many States, for example: State v. Engberg, 376 S.W. 2d 150 (1964, Missouri); Farmer v. State, 296 S.W. 2d 879 (1956, Tennessee); Jenkins v. State, 230 A.2d 262 (1967, Delaware), and has been considered a leading felony-murder case by the noted textbook writers. Criminal Law, by LaFave and Scott, page 548; Criminal Law, by Rollin M. Perkins on The Felony Murder Rule, page 37, et seq.; Wharton's Criminal Law and Procedure, by Ronald A. Anderson, vol. I, page 546.

Glover and Smith, however, do not walk a deadly parallel line. Glover has the arson, the fireman and the death but not the heart attack. Glover, in short, involved a more direct assault upon the victim.

Consider, now, the heart attack decision of People v. Stamp, 2 Cal. App. 3d 203, 82 Cal. Rptr. 598 (1970). Armed robbers held up the business office of a man who suffered from chronic heart trouble. The victim died of a heart attack 15 or 20 minutes after the holdup and the robbers were convicted of felony-murder. Apparently, the California court used the tort concept of proximate cause to fix criminal liability. See the criticism of the Stamp case in 43 Temple Law Quarterly 402 (1970), by Joseph M. Nicholson.

Stamp, in any event, has the heart attack lacking in Glover but lacks other aspects of the Smith case.

I agree with the district attorney of New York County that "there is a moral distinction between the arsonist who sets a fire for monetary gain and the robber who embarks on a holdup with a loaded gun and contemplates shooting it out, if necessary,

to gain his objective." Quoted in 18 University of Pitts. L. Rev., 51, at page 55, Foreseeable Death Felony Murder, by Frederick J. Ludwig (1956).

In any event, Stamp and Glover and Smith do not march down any deadly parallel paths.

We arrive at last, at the legal cause limitation of the felony murder doctrine. Herein, it is a medico-legal issue.

In simplistic language, Glenn Smith started an arson fire; a fireman named Albert Beute fought the fire and died of a heart attack.

Was fighting the arson fire the legal cause of Beute's heart attack death or not?

As to causation generally, 18 Pa. C.S. 303, devotes a page to "causal relationship between conduct and result" which is couched in such obscure language that it forces me to the cases for clarification.

The Supreme Court of Pennsylvania has addressed the medico-legal causation problem on several occasions.

In Commonwealth v. Banks, 454 Pa. 401, 311 A.2d 576 (1973), Justice Nix indicated that in felony-murder, the conduct causing death must be done in the furtherance of the design to commit the felony—the victim's death must be a consequence of the felony.

In Commonwealth v. Wright, 455 Pa. 480, 317 A.2d 271 (1974), Justice Pomeroy noted that the felony-murder doctrine does not apply to every death which coincides with a felony, but only to those deaths which are caused by the felon.

Commonwealth v. Williams, 455 Pa. 539, 316 A.2d 888 (1974) (Opinion by Justice Nix), draws a distinction between the production of medical evidence and proof of legal causations.

In short, to permit medical evidence as to the cause of death, it must be shown the witness entertained a "reasonable degree of medical certainty" for his conclusions.

The expert opinion, however, plus other evidence must warrant the finding of the cause of death "beyond a reasonable doubt."

Briefly, A Defendant's actions are the legal cause of death if they are a direct and substantial factor in bringing it about, Commonwealth v. Stafford, 451 Pa. 95, 301 A.2d 600 (1973); Commonwealth v. Johnson, 445 Pa. 276, 278, 284 A.2d 734 (1971). This is a stricter test than the "proximate cause" test of tort law (Commonwealth v. Root, 403 Pa. 571, 170 A.2d 310 (1960)), and the Commonwealth must prove causation beyond a reasonable doubt: Commonwealth v. Carn, 449 Pa. 228, 296 A.2d 753 (1972); Commonwealth v. Embry, 441 Pa. 183, 185, 272 A.2d 178 (1971); Commonwealth v. Radford, 428 Pa. 279, 236 A.2d 802 (1968): Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973).

A most interesting case is Commonwealth v. Embry 441 Pa. 183, 272 A.2d 178 (1971), which found our friend Dr. Cyril Wecht linking a robbery victim's heart attack to the robbery with a reasonable degree of medical certainty. The court held that a reasonable degree of medical certainty was not proof of causation beyond a reasonable doubt. The court made it very plain that if the Commonwealth's evidence did not establish causation beyond a reasonable doubt, a necessary element of proof of the crime was missing.

In addition, our Supreme Court has assailed such words as "probable causation" — "feasible" — "could" — "possible" — "within the realm of rea-

son"; these words do not suffice to prove causation beyond a reasonable doubt: Commonwealth v. Radford, 428 Pa. 279, 236 A.2d 802 (1968); Warden v. Lyons, 432 Pa. 495, 248 A.2d 313 (1968).

As previously indicated, the crucial testimony herein comes from two pathologists, Dr. Pellizzari and Dr. Wecht.

Running throughout their testimony are many areas of agreement and some basic disagreements. It would do no good to cite the testimony page by page, but I listened to it and have carefully studied it again and again.

In essence, Albert Beute had a heart attack while fighting the Smith Arson fire. The clogging of Beute's arteries had built up over several years but the blood clot which blocked the artery formed a few hours before his death.

According to Dr. Pellizzari, he could say with a reasonable degree of medical certainty that the stress of fighting the arson fire probably caused Beute's heart attack.

According to Dr. Wecht, he could not state with a reasonable degree of medical certainty that the stress of fighting the arson fire caused Beute's heart attack.

In fact, Dr. Wecht testified that Beute would have suffered this heart attack that night even if he had never gone to fight the fire.

No evidence of any kind was produced to prove a causal connection between the arson and the death beyond a reasonable doubt.

Obviously, there must be limitations to the bald language of Pennsylvania's felony-murder statute.

I can think of dozens of examples of reasonable limitations. Suffice to say, however, that I agree with the illustrations of arson deaths set forth in

LaFave and Scott's great book on Criminal Law on pages 264 and 549.

For instance at page 549: "On the basis of these principles, it is clear that if A sets fire to B's occupied house it is felony- murder if B or a member of his household or a fireman fighting the blaze is burned to death. While the chances may be all in favor of no one's death by fire, these deaths are neither unforeseeable nor the result of abnormal happenings. Firemen usually put out house fires without getting killed, but the death of a fireman fighting such a blaze happens often enough that its occurrence does not greatly surprise us. So too we would not view it as abnormal if a brave stranger were to rush into the house in an attempt to save a trapped member of B's household crying for help at an upstairs window; and if the stranger died in the fire, this would also be felony murder. On the other hand, it seems unlikely that the arsonist would be held guilty of felony murder if a looter entered the blazing building to steal whatever he could find or if a fireman were to fall off the fire truck on its way back to the fire station after putting out the conflagration."

The missing link is the direct and substantial contact between the accused and the victim. All of the recent Pennsylvania causation cases are of the direct contact variety: Commonwealth v. Webb, 449 Pa. 490, 296 A.2d 734 (1972); Commonwealth v. Banks, 447 Pa. 356, 285 A.2d 506 (1971); Commonwealth v. Scoggins, 451 Pa. 472, 304 A.2d 102 (1973); Commonwealth v. Carn, 449 Pa. 228, 296 A.2d 753 (1972); Commonwealth v. Pitts., 450 Pa. 359, 301 A.2d 646 (1973); Commonwealth v. Joseph, 451 Pa. 440, 340 A.2d 163 (1973); Commonwealth v. Embry, 441 Pa. 183, 272 A.2d

179 (1971); Commonwealth v. Radford, 428 Pa. 279, 236 A.2d 802 (1968). Such direct contact is here missing.

Even under the Commonwealth's testimony, the causal connection between the arson and the death was probably proved to a reasonable degree of medical certainty but not beyond a reasonable doubt.

Under the defense testimony, the causal connection between the arson and the death was not proved at all.

In any event, even under the evidence of the Commonwealth of Pennsylvania itself, the following order is as a command to me.

### ORDER

And now, January 19, 1976, I find Glenn Albert Smith not guilty of murder of the second degree as charged in indictment 217 of 1975 in the Court of Common Pleas, Erie County, Pa., Criminal Division.

Glenn Albert Smith shall be the subject of a pre-sentence investigation and shall be sentenced before Judge Lindley R. McClelland, County Court House, Erie, Pa. at 9:30 a.m., April 8, 1976.